Good morning, your honors. May it please the court, I represent Doris Amponsah Apori. I'm going to call her by her last name, her adopted last name, which is Apori. This case involves the intersection of immigration and family law. It of federal versus state power to regulate what constitutes the adoption of a child. Prior to 1957, under the immigration laws, a child did not include an adopted child for immigration purposes, which meant that if you had a family coming to the United States from overseas and bringing their family, a child who was adopted by that family unit was not included and could not come as a derivative. So in 1957, they amended the laws to add, to provide that adopted children who were part of the family unit could also come to the United States. The revisions in 1957 also added, on the definition of adoption, also added a provision talking about the age the child had to be at the time of the adoption occurring. And there's actually two separate provisions in the law that talk about who is a child, depending on which part of the Immigration Act we're applying it to, whether it's the first two subchapters, which have to do with visas, or it has to do with the naturalization and citizenship provisions. Which are we talking about here? We are talking about the visa provisions. That's 1101B? Yes. Okay. And that's what says a child adopted while under the age of 16 years? Correct, Your Honor. And she was adopted after, in fact, but then there was the – well, I shouldn't say that. She was adopted, at least the order of adoption post-dated her 16th year, and then the state court, nunc promptu, predated it. Exactly. In this case, the adoption paperwork was filed before her 16th birthday, but it wasn't finalized initially until afterwards. And then the court went in and entered an order, nunc promptu, granting the adoption to – after the date the petition had been filed, but four days before her 16th birthday. Is there anything in the record – I'm not sure this is relevant, but is there anything in the record that tells us whether the delay after the filing of the papers was sort of normal in that court, you know? Are they nunc protunquing it, saying, you know, we should have been a little quicker? Do we know anything like that? There's nothing in the record to indicate exactly why they decided what the delay was, but I think that if you just look at a normal court, I mean, it's very hard for them to make a decision on any case or get it to hearing in two weeks, and this was an adoption. So I think it would be very unlikely that they could resolve it that quickly. I mean, I'm sure there's the exceptions to the rule, but that would not be the normal situation. It's not like a year passed. Right, but what I'm asking in a way, I guess, is whether there's any indication that the nunc protunqu order, the fact of doing a nunc protunqu order is justified on the grounds that, you know, if we'd been a little quicker and in our normal processes, it would have been done faster. I suspect that's not what's going on. Yeah, based upon the fact that it was two weeks later that it would have had to have been issued, I find that unlikely. So basically what you're saying is that, as I understand your argument, and not unreasonable argument, that Congress expressed the intent that kids who were under the age of 16 and were adopted before they became 16, they could qualify as a child. Right. And that the BIA position on it has been, that's fine, but that's what those words mean. And if they're not actually adopted legally before that time, the state can't go back and help you cure the failure to have an official judgment of adoption. by predating it to come back, come within the rule. And you're saying that we should invalidate that bright line rule that they've adopted. Yes, that's what I'm saying. I'm saying that because there is definitely an issue of ambiguity about it under the Chevron standard, under the first prong, and that's obvious from the fact, if you look at these two different provisions of what a child is versus the naturalized, a child that comes under the provisions of naturalization or derivative citizenship, versus comes under this visa petitioning, that it's clear that they could have said it differently had they chosen to do so. And, in fact, they did in a separate provision. However, so clearly it's ambiguous. And then you get to the second prong of Chevron, which is, you know, is this an arbitrary and capricious determination that the BIA or that they made on this? And I think when you look at the issue that it creates a direct constitutional problem because you have the state laws which govern adoption and full faith and credit should be given to those state court orders, and you basically have the BIA said, well, we're not going to recognize that court order. And it's not an area that the federal government normally concerns itself with. And there's no allegation of fraud that the BIA's determination clearly is arbitrary and capricious. And, therefore, you have to follow what the state law says. And the state law says this is a valid adoption as of this date. We've got a long string of cases with non-protonc orders in immigration and criminal cases so that someone has been sentenced to a certain length of sentence, which then triggers a removal category. And then it goes back to the state court, and the state court non-protonc reduces the sentence or sometimes there'll be crimes that they'll non-protonc just do away with the conviction. And without getting into the fine grain of it, I'll just say that line of cases is very, very reluctant to recognize the non-protonc character of these orders. If you've been convicted and sentenced, that tends to be it. How would you distinguish that line of cases from what you're asking us to do here? Well, there's a couple of different ways. One is that when you're talking about criminal laws, there's a lot of federal cases specifically involving criminal laws as well, so that the federal government has an interest in adjudicating those kinds of cases. And this is a special area. Adoption is an area that the federal government doesn't get involved in. I mean, that's been reserved to the states. And I think that is one area that it becomes an issue. The other area has to do with the non-protonc in the criminal context and immigration impact is with the immigration impact on the non-protonc, it can be recognized as long as the reason for the change wasn't related to a specific immigration ruling, although arguably now with the Padilla line of cases, that could very well change. And they may find with the criminal cases, certainly if you could challenge it on the basis of Padilla, that they could go in and do non-protonc orders on that. I would argue that that may be changing. But previously, I think that it had to be a non-immigration issue to go in and revise the sentence or, you know, it's just like expungements under state law aren't always recognized for immigration purposes. And I understand that. It's the federal consistency. But now we have sort of different rules in that area. And I won't be surprised if you guys don't see one of those Padilla cases before you soon on that very issue because I know that's being litigated a lot at the local level. So I'm sure it's going to arise. But the Immigration Service has a special interest, of course, and the national interest is to stop spurious adoptions. So why isn't specifically the rule applied by the BIA reasonable? And I think you're trying to address that. But your argument seems to be, well, because that's something always left to the states because non-protunct orders regarding adoption. But doesn't that ignore, then, the nation's interest in a uniform rule regarding what constitutes qualifications to remain in the United States and eventually become a citizen? In other words, it seems to me you can have one state do this, one court issue non-protunct orders, you know, go to this judge, you'll issue non-protunct orders. I think that having adopted child, adoption in Michigan is a pretty clear date, and it's not that long because you go through a lot of things before that. So can you answer that question? The question being, then, how is it unreasonable, considering the fact that you can very easily have spurious adoptions and the nation's interest in some kind of uniformity? Well, there's two answers to that. First of all, the congressional intent in adopting this provision for these children and expanding the definition had to do with family unity. And that's a very important intent that the BIA totally ignores, and they're totally focused on the fraud issue. So that's part of the answer. The other part of the answer in terms of case law is that, you know, the federal government doesn't get to decide whether the state of Alabama lets you marry your uncle and the state of Washington does not. If it's a valid marriage under the state of Alabama, we have to recognize it in the state of Washington as a valid marriage. Likewise does immigration. So that is not an area that there are different laws in each state on that, and uniformity is not being used to say that, well, under federal law we're going to recognize that. Now, certainly some of these questions are going to come up. I mean, we have a law that was passed here yesterday in Washington State, or it looks like it's passing that's going to affirm the ability of homosexual couples to marry. Now, how is that going to impact that? I would argue that just like this adoption law, that the decision on whether to recognize a marriage is up to the individual state, and then every other state has to give full faith and credit to that marriage because it's part of those special laws that have been reserved to the states to make decisions on. If we were to adopt your position and say that the state gets to do a non-protonc order, would there remain such a thing as a fraudulent adoption? What if the government says, well, yeah, I understand we got a non-protonc order. The truth is there really is no valid adoption within the pre-16-year-old position, and the state court's been defrauded. There is a way to address that, Your Honor, and under all immigration laws. Can you get around the fact that you recognize it as a non-protonc? There it is. It's an order, valid under state law. Can you attack that and say, well, that was fraudulently obtained for purposes of federal immigration law? Yes, you can, just like in the marriage petitions, which you hear about the marriage fraud cases. It is very common, and it's not even just marriage fraud. In all areas of arena, all areas of immigration, whether it's an employment visa, whatever it is, there is still the right to question whether there is a fraudulent motivation or it was a fraudulent adoption. They could also go in and challenge it in state law. But immigration law, under all areas of law that I see as a practitioner, that is something that they can challenge, and they do challenge it. What about the government isn't saying that it was fraudulent, but the government is saying, you know, in any realistic sense, there was no adoption back to the date where this has been non-protonc? Can you get at that? Yes, in this case, the child was already living with her biological aunt. The placement reports were done. She was there. So legally, I think, although it wasn't, the formal adoption hadn't occurred, if you look at it as a factual matter, what would have been different had she had that legal order? Nothing. It wasn't like they're doing a non-protonc adoption for a child that wasn't actually living in the household to be cared for. Maybe part of your answer is, although you may not like it in this case because the IJ found against you, I.B.I. didn't reach it, is that, well, there's a limitation on the usefulness of the non-protonc because they have to have been living with the adoptive parent for two years. Right. And that is another requirement. But in this case, the adoption, as long as it occurred before they're 16, the custodial portion of it can occur afterwards. So she's still fine. So if this court finds that she needs this. That's not in front of us, but I gather. So that's your answer to what the IJ did. Yeah, so to me, that's a non-issue. The other thing is that we can file a new I-130. We can potentially get the priority date. The immediate relative petition for the adoptive parents can be refiled. We can request to recapture the prior date. We can file a motion to reopen. And that's part of the reason why this is a live case and it's not a moot issue is because this does affect the relationship between these people. Okay. Can I ask just one question? Please do. Go ahead. Would you please respond, just briefly if you can, to the fraudulent marriage issue? Where are we on all that right now? And what is your response to that? Okay. Yes. First of all, the Board of Immigration Appeals didn't have the right to make a factual finding. That has to be done by the judge. And that's really clear by the regulations as well as by this court's opinions. Secondly, in the context, as I was stating about filing a new I-130 and in the matter of TOWIC, which is the only BIA case of record on how do you interpret the marriage fraud and when is it final, when you file a new I-130, you have the right to submit additional information on the validity of a relationship. So in this case, that marriage fraud that was alleged, even though there is a BIA decision that was issued that said, yes, we're finding marriage fraud, we're not precluded from going back in, filing a new I-130, and presenting additional evidence of it. So it doesn't make this case dead. Okay. Let's hear from the government. And, well, we've taken you over, but we'll give you a chance to respond. Thank you. May it please the Court. Catherine Smith for the respondent, the Attorney General. Well, the government takes a very different view of the posture of the case. We believe the case is, in fact, moot. This is not an appeal of the visa denial itself. This is an appeal of the denial of an adjustment of status application in removal proceedings. So the only issue before the immigration judge and the Board, in this case before you, is whether Ms. Samponza submitted prima facie eligibility or an approved visa petition such that she could adjust status. Before the immigration judge, they gave her many years to seek these petitions. Her husband filed a petition. Her mother filed a petition. They've all been denied. They weren't denied at the time of the Board's decision, but they've all been denied now. So even if the Court were to disagree on all the reasons the Board thought it would be denied, the fact is they all are denied. So if the Court were to send this case back down, she'd be in the same position of seeking adjustment of status without an approved visa petition. Okay, and the requirement is what, that she have it? To adjust. As I understand it, she filed, applied for adjustment. Is that correct? That's correct. She applied for adjustment before the immigration judge. Okay, and then the alien is eligible to receive an immigrant visa and is admissible. Right. When does that have to be? Those need to be demonstrated before she can be granted adjustment of status. Okay, but not at the time she files. No, she filed for adjustment and said, I don't have the petition yet. I'm going to go get one. My husband's going to file one for me. And everybody said, that's great. This is usually a very simple, straightforward process. We have the DHS trial attorney on record saying she's optimistic this is going to go well. And as time passed, the first visa came back denied based on marriage fraud. Now, this isn't an issue that would have been relitigated in immigration court. If she wished to seek review of the visa denial, she should file further appeal of the visa denial itself. Or rather, the person who filed the petition, her husband, should seek further review of that visa denial. So that was denied on marriage fraud. That's correct. Okay, and that's an issue in this case. It is, because here the board said, okay, first you have the visa denial from the husband. The fact that this was denied on marriage fraud is going to prevent you from ever getting a visa filed by anybody. There's a congressional statute that says, marriage fraud prevents you from getting a visa petition filed by any future spouse, legitimate or otherwise. This is a very serious offense. So this later petition filed by her mother, even if you disagree with the NUNC-PROTUNC analysis, it will still be denied because she previously engaged in marriage fraud. And these are issues. What's the effect of us reviewing that part of her claim in this case? What if we found that there was a due process violation, for example, in taking administrative notice, and that she didn't have an opportunity to challenge it? Well, she does still have an opportunity to challenge it, and the correct course to do that would be to file an APA challenge in district court of the visa denial. The issue is only relevant in immigration court to the extent that it demonstrates she does not have an approved visa petition. She wasn't denied adjustment of status because she engaged in marriage fraud. She was denied adjustment of status because she didn't have a petition. I see. If she were to be successful in district court in getting both of her denied I-130 visa petitions reversed, it could then, she could file a late motion to reopen with the agency. It could go back. And at that point, the marriage fraud might come up again in the area of discretion, because adjustment of status is a discretionary application. So she may still have some difficulties then. At that point, they would hear evidence on it, decide whether, you know, the positive equities outweigh the negative factors in deciding whether or not to grant her adjustment. But she still needs to go through the hoops of obtaining an approved visa petition before she has any hope for relief before the immigration judge and removal proceedings. Okay. So then does the NUNCPRO-TUNC issue, is that playing a role at all in these other, these subsequent denials, or is it all based on marriage fraud? The marriage fraud is dispositive of the marriage visa and the NUNCPRO-TUNC visa. Okay. The NUNCPRO-TUNC visa itself is independent. Right. If the court was to disagree with the NUNCPRO-TUNC analysis, which I'm happy to discuss the merits of that as well if you would like, and reverse it, she'd still be back before the immigration judge without a visa because this is such an appeal of the visa denial itself. All of the cases, the district court cases matter. Was her, I'm losing track of the parties, there were two visa petitions filed, one by the husband? Correct. And one by? And one by the adopted mother. Mother. And hers was denied on what ground? The first one was the husband's, and that was denied on marriage fraud grounds. I understand. What happened with the adopted mother? The second one was at the time of the board's decision had not been denied yet. Right. Well, actually it had been denied, but the board was not aware of that. Okay. It had been denied by CIS on the NUNCPRO-TUNC issue. It could have denied it on either the marriage fraud or NUNCPRO-TUNC. It went with the NUNCPRO-TUNC. Okay, so why is it moot then? Because all you're saying is they went ahead and denied on marriage fraud, and if we were to find, excuse me, on adoptive NUNCPRO-TUNC, what if we were to reverse the board's rule on that? Then wouldn't that negate or undermine then the denial of the adoptive mothers? It's kind of circular. Well, if you were to say. . . If you moot out this case, you're depriving, you're basically using denial using the same ground, in effect, to moot the case on an issue that is up for decision bias. So if we agree with her on NUNCPRO-TUNC being arbitrary and capricious, then wouldn't that undermine the denial of the adoptive mothers petition? I'm trying to follow your question. I'm trying to follow the facts. If this court were to reverse the NUNCPRO-TUNC finding and say that's incorrect and send it back to the immigration court, she would still be there seeking adjustment of status without an approved visa petition. But let me ask you this. I'm hoping to clarify rather than to tangle further. Okay. I think I heard you say that the BIA issued its decision, the one that we're now reviewing, at a time when she did not have an approved visa. Is that correct? That's correct. It was still pending. Well, but now I think I hear you also telling me that in order for this to go forward, she has to have an approved visa petition, whereas I just heard you say, well, they've decided the case without having such an approved petition. What I mean is she can seek further review of those visa petitions through an APA challenge in district court. I understand that, but that doesn't mean that this is moot or not moot, because at least as I've understood you, and I may be misunderstanding you. As I've understood you, you're saying, well, she can't go forward here with this removal case because she doesn't have an approved visa petition. Is that what you're saying? That is correct. If that's so, why was the BIA willing to decide the case when she had no approved visa petition? The BIA was looking at the case to determine, well, is she likely to get one in the future? Could she apply again if we say wrong on marriage and wrong on adoption? If you were to decide on both those dispositive issues, that the marriage fraud bar does not apply and the board does not owe Chevron deference to its non-proton, then, yes, she could apply again. So it's not moot in that event? It's possibly not moot in that event. Okay. Did the court have any questions for the government regarding the non-proton adoptions? Oh, yeah. Yeah, we're finally getting to the merits of the case. Okay. So the board found that she does not have a prima facie approvable visa because non-proton adoptions in interpreting the immigration statute do not qualify somebody as an adopted child. Yeah, we got that. So it's clear to be sure that the immigration statute is what is being interpreted here, not the state adoption law. The board's not conducting adoption proceedings. It is because it's interpreting what constitutes an adoption. Under the immigration statute. Yeah. Just like when the board decides what constitutes a conviction for immigration purposes. Even if a state court expunges a conviction, this court has found the board can still find it. That's what we were talking about when she was up. So it says if a child is adopted while under the age of 16 years. Right. So the board doesn't have any particular expertise on what – because there's no federal law of adoption. So if the state says, and she comes in with an order saying she was adopted for state law purposes as of a pre-16-year-old birthday, why isn't that entitled to be dispositive? Because it's a matter of state law, and that's what adoption is. What does the board look to to say, well, she wasn't adopted? The board is looking to its own definition of child that's in the Immigration and Nationality Act. Child. I'm looking at adopted. Well, adopted child. It's 8 U.S.C. 1154 A1 AI. That's the term that the board is interpreting. It's not looking at what does the state think of as adoption, what does these non-croton orders say. It's looking at its own statute that says child. And this court has always held that the board is entitled to Chevron deference in interpreting its own statutes. It's not saying that this adoption is not legitimate. Give me the statute again. I've got it. It's 8 U.S.C. 1154 A1 AI. And the board first published a decision interpreting the statute in matter of Carriaga. Again, this case, Carriaga, is an appeal of a visa denial, unlike this case, which is an appeal of adjustment of status case. And there in Carriaga, the board found the statute silent with regard to whether non-croton adoptions qualify under this Immigration and Nationality Act statute and that it's going to look at congressional intent and decide to reasonably interpret it as a strict it has to be adopted before you turn 16. You're getting ahead of me. Okay, I'm now looking at 1154 A1 AI. Okay, now, can you just look at that? I'm not challenging you. I'm just trying to understand. Okay, so where's the child reference in there? I think I gave you the wrong statute. Try 1101 D1E. Yes, thank you. I apologize. Are you with us? I think Judge Quist has it right. Okay, yes. 1101 D1E i. That's correct. The term child means an unmarried person under 21 years of age who is a child adopted while under the age of 16. The child's been in the legal custody of and resided with the adopting parent or parents for at least two years. This is the statute that the board is. Yeah, but we're looking at the word child, and what it's talking about is a child adopted. Okay, so adopted means that they have been convicted. They have been adopted. Okay, you go to look to see whether or not under the criminal side has somebody been convicted, right? Okay, you go to the state law to determine whether they've been adopted. Okay, adopted is a family law status, and in Washington, I guess this case is, they issued a judgment that's binding within Washington, for all purposes, that she was adopted effective before her 16th birthday. So why doesn't the board defer to that? Where does it get a different concept of adoption? Well, the board looked to the congressional history of where this, when the statute was created, what did Congress mean by adopted child? And the history that's quoted in the government's brief demonstrates that Congress was concerned with people being adopted over the age of 16 as engaging in fraudulent adoptions solely to evade quotas on immigration. But they also wanted family unity. That was part of it. That's correct. There's two competing goals at interest here. And so the board reasonably decided to go ahead. So why a bright line, though? Why a bright line? You're saying that the only way they could address fraud, apparently, was to have a bright line rule that ignores the state judgment, which says they are adopted for state law purposes. Now, if there's, the counsel was asked, is the government precluded from challenging an actual fraudulent one? Is the government? I mean, there's no allegation of fraud in this case. Well, there's no facts regarding the adoption really at all in this case because that goes to the issue of whether she should be granted a visa. Those were documents submitted to CIS. In this case, all we have is an adjustment application waiting for an approved visa petition. So they didn't litigate the issue of whether this is a valid adoption. Well, that's because they wanted to do it just on the basis of when the papers were filed. Right, because the board and the immigration judge. And since we were to say, wait a minute, it's not just an issue of when the papers were filed. It's the issue of if you've got a nunk-per-tunk, you look at that date. Then I guess you'll move on to say, oh, well, if you want to, this was fraudulent. Whether it is or not, I have no idea. Right. Well, in this case, the Department of Homeland Security did move to compel Ms. Amponza to produce her adoption documents to start discussing this issue. She declined to do so, said she was unable to obtain them from the state court. So those facts are not in this record. They're probably presented to USCIS with the visa petition. So if she really wants to challenge the nunk-per-tunk adoption, it would be much simpler to do so. Well, I'm not sure if she wants to challenge the nunk-per-tunk adoption. I think she wants to say, I'm adopted, and here's the order. She wants to say, this is a valid adoption. She's not challenging at all. What I mean to say is if she wants to raise that claim, the more appropriate forum would be to raise it relating to the visa denial itself. Then she could come back to the board and say, here, I finally have my visa. I can adjust status now. I want to go back to where we were before. The board seems perfectly content to decide whether or not she's been validly adopted. And you're saying this is the wrong forum for that decision to be made? Well, the board said we're going to pre-terminate your application because it doesn't look like you're going to be able to get the visa you need from CIS for these following reasons because, one, the marriage fraud bars you from getting a visa from anybody ever. And the board's consistently, since 1957, when adopted immigrants were allowed to first immigrate, we've consistently had a strict deadline. So we don't think you're going to get the visa, so there's no reason to continue these proceedings. We're going to pre-terminate your application and grant you an order of voluntary departure, which, since she did not voluntarily depart, has now become an order of removal. When the board made that decision, it was correct that there was no approved visa petition in front of them. We now know all the visas have been denied. So sending it back would put her back in the same position. She doesn't have the visa. I'm still trying to understand this. It's tricky with the parallel visa proceedings and the removal proceedings. Forget the marriage fraud part. It's the adoptive mother. She proceeds, and then she says, she's not your child because she hasn't been adopted within the time frame before her 16th birthday. And she says, yes, she was. The state order, non-proton, shows that she was adopted before she turned 16. And you're saying, how would she litigate that? She would litigate that. Well, her mother is the one who would actually litigate this. Her adoptive mother would litigate that. Right. She would file an APA challenge in district court saying the board acted arbitrarily and capriciously and in violation of law. And if she's successful there, the district court would tell CIS, you need to give her a visa. You can't deny it on these grounds. CIS is likely to come back and say, okay, we can't do that. But she's still, we can't give her a visa because she engaged in marriage fraud. So she really should seek appeal of both visa denials for the ultimate cause of success. So, in effect, what you're saying is the argument we've been having today about the Chevron deference and the arbitrary and capricious with regard to the Nook Park Tuck rule is that it should be litigated in the district court. It should be. Under an APA challenge so the district court could decide. That's correct. It's almost an academic exercise to discuss it here. Judge Quist is a district judge, so maybe we can get him. It's like I'm not going to read that 800-page book we were talking about. All right. So is that still an avenue that's open, or are you just saying? It is still an avenue that's open. I believe there's typically a six-year statute of limitations to seek appeal. But this is all fascinating to me. These statutes and regulations and so on overlap and are so complex, and you're being very helpful here, and I'm learning things. What puzzles me is not what you're saying about, well, this is available to be challenged, both of the visa denial applications. Both of those can be challenged in district court. I got that part. But it sounds as though the grounds upon which those visa denials took place and were likely to take place if a new visa application were to be granted were decided as a matter of legal principle by the BIA. So I don't see why we don't get to tell the BIA, well, wait a minute, you may be wrong as to these principles. It sounds as though these questions, both as to date of adoption and marriage fraud, can be decided in both places because the BIA decided them here in this setting. Well, and if you were to decide them here and send the case back down, we'd still get to the problem that she'll be in removal proceedings trying to adjust status without the visa. If, for example, she were to win. Here. Here. I suspect that her visa application is going to look a lot better. It probably would, but then she'll still have one final barrier, that adjustment of status is a discretionary application. At that point. That's fine. I got that. Right. So you're saying that you know that the discretion is already. No, I'm saying that's an additional barrier that she'll have to face there. Of course. Yeah. And I think that discretionary decision is probably not reviewable. Is that right? That's correct. But why isn't it reasonable? I mean, if you have a judge that sits on something and he goes, hey, call him. He says, well, listen, I'm going away for a month. You know, don't bother me. And, I mean, that's what he could do. And then he comes back, and they said, my God, Judge, you're keeping this gal from coming to the United States of America. Oh, I'm sorry about that. Non-pro-tunk. So why can't you do that on an ad hoc basis with evidence as distinguished from, and this would make it unreasonable just saying, according to Kelly here anyway, and make it on a case-by-case basis instead of this broad rule? And isn't that what a lot of district courts have actually held? That is certainly a reasonable interpretation the board could have taken. It's not the only interpretation. They decided that the congressional intent here was more concerned with avoiding fraud than with family unity, so they took a different reasonable interpretation. When there's multiple reasonable interpretations, the courts do owe the board deference to interpret its own statutes. Okay. I'm sorry, we're writing this out, but this is a hard case. I understand. It's procedurally very complicated. One question on the non-pro-tunks with respect to the criminal cases as distinct from the adoption or separation cases, because that's one of those, too. It strikes me that one relevant difference might be that in the criminal cases, what the federal statute is trying to figure out is how seriously bad was the conduct, and I think we refuse to recognize most of these non-pro-tunk orders by saying, well, we had a judgment out of the state court as to how bad it was, both in terms of the sentence or what the conviction was for, and we don't want to give the state court a chance to tell us differently as to how bad the conduct was. They've given the judgment, and that's what the conduct was. Here we're talking about status, not bad conduct. We're talking about do we have a real, a de facto adoption that the court has chosen to recognize by its de facto or by its non-pro-tunk order. As a matter of state law, that really was an adoption back at that date. We're not accusing the child here of wrongdoing. We're just trying to figure out at what point did this status really happen, and the state court has said by its non-pro-tunk order it happened then. Is there a question? No. That's what I'm trying to look at, and I want to say that so you can say that's the wrong way to look at it. I haven't looked at the issue of criminal non-pro-tunk orders. I've looked at when a state court expunges a criminal conviction  or that conviction for immigration purposes. Those are the cases I'm looking at. Okay. Thank you. We've got a chance for a response, but your arguments have been very helpful. Okay. Thank you. I don't know that I have a lot more for the court. I did want to point out that Could you comment on this alternative avenue of addressing the marriage fraud and the non-pro-tunk going through the district court? I think that if the Board of Immigration Appeals had not specifically stated that the reason they were denying it was because the adoption wasn't under the age of 16, I don't think I'd have that argument before this court. I think I would have had no option but to go to district court. But because the BIA relied on that in making their decision, I believe that's why you have jurisdiction over that issue. Okay. The other point I wanted to make, again, recognizing state law, is this circuit has recognized when there's not fraud in particular that the state interpretation should apply. And the most recent case on that was the Anderson v. Holder case,  and it had to go to the determination of whether a child was derivatively a citizen or not. Another one, again, on derivation of citizenship, there was a state non-pro-tunk order on a legal separation of a child, and that was Minnesota v. Gonzales, and that's a 2004 case. And, again, that was a California case, I believe, and the state court said they had entered a custodial order and a divorce that said they separated this time, they had a child by this time, but it wasn't a formal legal separation, and they went in and got a non-pro-tunk. And, again, no allegation of fraud. It was, in fact. On the other hand, there are other cases that have come before this court where there was fraud allegations, and the court has refused to recognize that for various purposes, including a situation where some person who was a child of a U.S. citizen went and got his parents' marriage annulled after they were dead. I mean, those kind of situations, it seems fairly obvious. And that was a Mexican divorce, too. Anyhow, thank you very much. Thank you. Thank both of you for being very helpful. Yeah. No? Thank you. We can read it. We do. The last case, I'll use it off the caption. Emponza v. Holders now submitted for decision. Okay.
judges: Quist, Fletcher, Fisher